**DeNITTIS OSEFCHEN PRINCE, P.C.**
**Stephen P. DeNittis, Esq. (031381997)**
**Joseph A. Osefchen, Esq. (024751992)**
**Shane T. Prince, Esq. (022412002)**
**525 Route 73 North, Suite 410**
**Marlton, New Jersey 08053**
**(856) 797-9951**

**Attorneys for Plaintiff**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| VINCENT TRIPICCHIO, on behalf of himself and all others similarly situated,<br><br>Plaintiff<br><br>vs.<br><br>THE UPS STORE, INC. and JB & A ENTERPRISES, INC.,<br><br>Defendants. | CASE NO. 3:21-cv-14512<br><br>**AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND** |

### <u>INTRODUCTION</u>

1.     This is a class action brought under New Jersey law on behalf of a class of consumers who, between November 30, 2014 and the present, were charged notary fees by Defendants at UPS Store locations in New Jersey which exceeded New Jersey legal limits.

2.     As outlined in greater detail herein, <u>N.J.S.A</u>. § 22A:4-14 sets the maximum allowable fee that can be charged for notarizing a document that does not relate to the transfer or financing of real estate at $2.50 and does not permit any additional fees for notarizing such documents, whether those fees are labeled as **"Notary Convenience"** fees or otherwise.

3.     As outlined in greater detail herein, Defendants employ a uniform policy of charging more than the $2.50 statutory maximum for notarizing such documents.

1

4.      Specifically, Defendant JB&A Enterprises, Inc. has charged fees that total either $10 or $15 for notarizing documents during the class period – amounts that are at least four times the maximum permitted statutory fee.  The $15 fee is described on the customers' receipts as a $2.50 **"Notary"** fee and an additional $12.50 **"Notary Convenience"** fee.

5.      Such a $12.50 **"Notary Convenience"** fee – and indeed, any notary or associated fee greater than the statutory maximum fee of $2.50 – violates the plain language of N.J.S.A. § 22A:4-14 and is unlawful in New Jersey.

6.      The class complaint seeks to obtain an injunction to end Defendants' illegal policy of notary fee overcharges and to obtain refunds of those illegal overcharges, with the complaint bringing statutory claims under the New Jersey Consumer Fraud Act, the New Jersey Truth in Consumer Contract, Warranty and Notice Act and common law claims under the theories of unjust enrichment/ disgorgement, breach of contract, and negligence, as well as a claim for an injunction barring the unlawful practice alleged herein, on behalf of Plaintiff and the class as a whole.

## JURISDICTION AND VENUE

7.      Jurisdiction over this matter is proper in the United States District Court under the Class Action Fairness Act in that this is a proposed class action, the Defendants are citizens of a different state than the Plaintiffs and the members of the proposed classes, and the amount in controversy exceeds $5 million.

8.      Venue is proper pursuant to 28 U.S.C. §1391 in the District of New Jersey, in that Defendant JB&A Enterprises, Inc., Plaintiff, and the majority of the class members are each New Jersey citizens.

2

## THE PARTIES

9.      Plaintiff Vincent Tripicchio is a citizen of New Jersey and resident of Moorestown, Burlington County, who, like every other proposed class member during the class period, was charged a notary fee by Defendants that exceeded $2.50.  Specifically, Plaintiff was charged a notary fee of $15 – described by Defendants as a $2.50 **"Notary"** fee and a $12.50 **"Notary Convenience"** fee on the receipt – for notarizing a document at a UPS Store in New Jersey that did not relate to the transfer or financing of real estate.

10.     Defendant The UPS Store, Inc. is a Delaware corporation headquartered at 6060 Cornerstone Court West, San Diego, California 92121.  Defendant The UPS Store, Inc. is registered to do business in New Jersey, does in fact do business in New Jersey, and may be served with process by service upon its registered agent in New Jersey.

11.     Defendant JB & A Enterprises, Inc. is a New Jersey corporation with its principal place of business located at 3111 Rt. 38, Suite 11, in Mount Laurel, New Jersey 08054 and is the nominal owner and an operator of UPS Store #1155, located at 3111 Rt. 38, Suite 11 in Mount Laurel, New Jersey 08054.

12.     Defendant The UPS Store, Inc. has a franchise relationship with Defendant JB & A Enterprises, Inc. in that Defendant The UPS Store, Inc. is a franchisor and Defendant JB & A Enterprises, Inc. is a franchisee.

13.     No claims in this case are based solely on the status of Defendant The UPS Store, Inc. as the franchisor of Defendant JB & A Enterprises, Inc. and/or The UPS Store #1155.

14.     Rather, all claims pleaded herein against Defendant The UPS Store, Inc. are based solely on the actions of Defendant The UPS Store, Inc. in that the unlawful uniform policy alleged herein is not limited to UPS Store #1115, but is in fact followed by all UPS stores in New

Jersey at the direction and/or with the approval of Defendant The UPS Store, Inc.   Indeed, the complained-of uniform policy of overcharging for notary fees is expressly permitted by Defendant The UPS Store, Inc.  Moreover, Defendant The UPS Store, Inc. requires its franchisees to pay Defendant The UPS Store, Inc. a share of the proceeds of said unlawful uniform policy.

## FACTS WHICH GIVE RISE TO THE CLASS CLAIMS

15.    As a matter of uniform policy, each UPS Store in New Jersey offers notary services to customers.

16.    Indeed, Defendant The UPS Store, Inc. requires each UPS Store franchise in New Jersey, including Defendant JB&A Enterprises, Inc., to offer notary services to UPS Store customers.

17.    Defendants themselves are not commissioned notary publics.  Rather, Defendants employ individuals who are commissioned notary publics, and those employees have the authority to notarize documents and provide notary services in New Jersey.

18.    The notary services offered and performed by Defendants' employees at UPS Stores in New Jersey are almost exclusively for purposes unrelated to the transfer or financing of real estate, such as notarizing power of attorney documents, wills, and affidavits.

19.    Indeed, notarization of documents relating to the transfer or financing of real estate are routinely performed by a title agent or attorney at closings or by a bank employee when the notarized document relates to a mortgage.

20.    New Jersey law places a legal limit on the fees that can be charged for notarizing documents in New Jersey.

21.     Specifically, N.J.S.A. § 22A:4-14 provides that for notarizing any document which does not relate to the transfer or financing of real estate, a notary may charge a fee of no more than $2.50.  See N.J.S.A. § 22A:4-14, providing that a notary **"shall receive a fee as follows:**

> **For administering an oath or taking an affidavit, $2.50.**
> **For taking proof of a deed, $2.50.**
> **For taking all acknowledgments, $2.50."**

22.     N.J.S.A. § 22A:4-14 does not authorize, and in fact plainly bars, any other type of fee charged for notarizing such documents, including any purported **"Notary Convenience"** fee.

23.     Similarly, the New Jersey Notary Public Manual provides that notarial officers may collect only $2.50 for notarizing documents that do not relate to the transfer or financing of real estate.  See, e.g., New Jersey Notary Public Manual (Oct. 22, 2021) at Chapter 11, stating: **"Notarial officers may collect the following fees for services rendered: … For administering oaths, taking affidavits, taking proofs of a deed, and taking acknowledgements, $2.50 per act."**

24.     Throughout the class period, Defendants have pursued a uniform policy of charging an unlawfully high fee for notarizing all documents unrelated to the transfer or financing of real estate at UPS Stores in New Jersey.

25.     Specifically, at The UPS Store franchise run by Defendant JB&A Enterprises, Inc., Defendants charged either a $10 or $15 notary fee during the class period, with Defendants labeling the $15 fee on the customers' receipt as a $2.50 **"Notary"** charge and a $12.50 **"Notary Convenience"** fee.

26.     Moreover, Defendants retain all of the notary fees collected from customers, including both the **"Notary"** charge and the **"Notary Convenience"** fee.  No portion of said fees are shared with Defendants' employees who are the commissioned notary publics; rather, the notary fees are divided between Defendants.

27.     This uniform policy constitutes an unlawful overcharge and is illegal in New Jersey.

28.     N.J.S.A. § 22A:4-14 plainly bars any additional or ancillary charges for notarizing documents and does not permit any additional fees for notarizing documents beyond the statutory fee of $2.50, no matter how that fee is labeled.  Thus, Defendants' charging notary fees of $10 and $15 is unlawful.  Defendants' act of splitting the $15 notary fee into a $2.50 "Notary" fee and a $12.50 a "Notary Convenience" fee does not make this overcharge any less unlawful.

29.     Indeed, the $12.50 **"Notary Convenience"** fee is plainly not even for any actual expense or service. This $12.50 additional notary fee is being charged inside the UPS Store where the notary works, meaning that the customer comes to the notary and not the other way around; thus, the notary has no mileage or travel expenses. Moreover, no additional services are being performed beyond simply notarizing the documents at issue.

30.     The unlawful uniform policy alleged herein is not limited to UPS Store #1115 and is in fact followed by all UPS stores in New Jersey with the knowledge and consent of Defendant The UPS Store, Inc.

31.     Indeed, this unlawful policy was expressly permitted by Defendant The UPS Store, Inc., which requires its New Jersey franchisees to provide notary services to its customers. Although Defendant The UPS Store, Inc. purportedly requires its franchise stores (including Defendant JB&A Enterprises, Inc.) to follow all applicable laws – and has the ability to

6

terminate the franchise relationship if they do not – Defendant The UPS Store, Inc. knowingly permits its franchises to charge higher notary fees than permitted by New Jersey law.  Worse, Defendant The UPS Store, Inc. receives a share of the proceeds of those unlawful overcharges.

32.     What happened to Plaintiff illustrates Defendants' unlawful policy.

33.     On October 13, 2020, Plaintiff sought to have a durable power of attorney document notarized at Defendants' UPS Store #1155 in Mt Laurel, New Jersey. See Attachment A, power of attorney document notarized for Plaintiff at UPS Store.

34.     That document did not relate to the transfer or financing of real state. Id.

35.     Defendants charged Plaintiff $15 for notarizing that document. See Attachment B, UPS Store receipt dated October 13, 2020, listing a $2.50 **"Notary"** fee and a $12.50 **"Notary Convenience"** fee.

36.     Defendants did not incur any expenses in this transaction for mileage in that Plaintiff traveled to the UPS Store to purchase these notary services, which were performed by Defendants' employee on the UPS Store premises.

37.     Nor did Defendants perform any additional services for Plaintiff beyond notarizing the single power of attorney document which is attached hereto as Attachment A.

38.     What happened to Plaintiff was not an accident or an oversight. It was part of a uniform policy in which Defendants unlawfully charge a $15 fee for notarizing documents for which N.J.S.A. § 22A:4-14 mandates that the maximum notary fee is no more than $2.50.

## CLASS ACTION ALLEGATIONS

39.     Plaintiff brings this action as a class action on behalf of himself and all members of the following proposed class:

> **All persons who, between November 30, 2014 and the present, were charged a fee of more than $2.50 for notarizing any document not**

**related to the transfer or financing of real estate at a UPS Store in New Jersey.**

40.    Plaintiff also seeks certification of a sub-class defined as:

**All persons who, between November 30, 2014 and the present, were charged a fee in excess of $2.50 for having a power of attorney document, will, affidavit, or other document not related to the transfer or financing of real estate notarized at UPS Store #1155, in Mount Laurel, New Jersey.**

41.    The class and sub-classes are each so numerous that joinder of all members is impracticable and each include at least 100 persons.

42.    The exact number and identities of the persons who fit within each proposed class are contained in Defendants' records and can be easily ascertained from those records.

43.    Common questions of law and fact exist as to each class member.

44.    All claims in this action arise exclusively from a uniform policy as outlined herein.

45.    No violations alleged in this complaint are a result of any individualized oral communications or individualized interaction of any kind between class members and Defendants or anyone else.

46.    In the case at bar, there are clearly a number of issues of law and fact which are identical as to the entire class and sub-class, including:

   a.  Whether Defendants are lawfully allowed to charge a notary fee of $10 or $15 for notarizing the documents at issue;

   b.  Whether N.J.S.A. § 22A:4-14 bars Defendants from charging more than $2.50 for notarizing the documents at issue;

   c.  Whether N.J.S.A. § 22A:4-14 bars Defendants from charging a notary or other convenience fee for notarizing a document in addition to the statutory notary charge;

d.  Whether Defendants' policy of charging notary fees in excess of what is allowed by N.J.S.A. § 22A:4-14 constitutes an unlawful and unconscionable commercial practice in violation of N.J.S.A. § 56:8-2 of the Consumer Fraud Act;

e.  Whether Defendants' act in offering and presenting signs and form notices relating to the these illegal fees to Plaintiff and the class violated N.J.S.A. § 56:12-16 of the Truth in Consumer Contract, Warranty and Notice Act; and

f.  Whether plaintiff and the class are entitled to an injunction barring the challenged practice and requiring Defendants to limit notary fees to the amounts permitted by N.J.S.A. § 22A:4-14.

47.  Plaintiff is a member of the class and sub-classes he seeks to represent.

48.  The claims of Plaintiff are not only typical of all class members, they are identical.

49.  All claims of Plaintiff and the class arise from the same course of conduct, uniform policies and procedures as outlined herein.

50.  All claims of Plaintiff and the class are based on the exact same legal theories.

51.  Plaintiff seeks the same relief for herself as for every other class member.

52.  Plaintiff has no interest antagonistic to or in conflict with the class.

53.  Plaintiff will thoroughly and adequately protect the interests of the class, having retained qualified and competent legal counsel to represent himself and the class.

54.  Defendants have acted and/or refused to act on grounds generally applicable to the class, thereby making appropriate injunctive and declaratory relief for the class as a whole.

55.  The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual members of the class, which would confront Defendants with incompatible standards of conduct.

56.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, inter alia, the damages suffered by each class member are

9

$12.50 or less per document and are therefore too low to make individual lawsuits economically feasible.

57.    Common questions will predominate, and there will be no unusual manageability issues.

58.    Without the proposed class action, Defendants will likely retain the benefit of their wrongdoing and will continue the complained-of practices, which will result in further damages to Plaintiff and class members.

<u>COUNT I</u>

**Uniform Declaratory Judgment Act, <u>N.J.S.A</u>. 2A:16-51, <u>et seq</u>.**

59.    Plaintiff incorporates all preceding paragraphs as though fully set forth at length herein.

60.    Plaintiff and the class need, and are entitled to, a declaration that Defendants' policy as described herein is unlawful and that Defendants are barred by law from charging more than $2.50 for notarizing documents unrelated to the transfer or financing of real estate.

61.    Plaintiff and the class members have a significant interest in this matter in that each has been, or will be subjected to, the unlawful policies alleged herein.

62.    Based on the foregoing, a justifiable controversy is presented in this case, rendering declaratory judgment appropriate.

63.    In addition, because the unlawful uniform policies of Defendants are ongoing, Plaintiff and the class also need, and are entitled to, an order for equitable and injunctive relief, barring the continuation of those policies.

## COUNT II

### Consumer Fraud Act, N.J.S.A. § 56:8-1, et seq.

64.     Plaintiff incorporates all preceding paragraphs of this complaint as if set forth fully herein.

65.     Defendants' uniform policies as described herein constitute sharp and unconscionable commercial practices in the sale of services in violation of N.J.S.A. § 56:8-2 by charging fees in an amount which is higher than the maximum fee allowed by New Jersey law.

66.     As a proximate result of the unlawful conduct by Defendants, Plaintiff and the class members have suffered an ascertainable loss of money and property.

67.     Plaintiff seeks, inter alia, refunds of the illegal overcharges for himself and the class and to obtain a class-wide injunction on behalf of the class under the Consumer Fraud Act barring the continuing illegal policy at issue, as discussed, certified and approved in Laufer v. U. S. Life Ins. Co. in City of N.Y., 385 N.J. Super. 172 (App. Div. 2006).

## COUNT III

### Truth in Consumer Contract, Warranty and Notice Act, N.J.S.A. § 56:12-14, et seq.

68.     Plaintiff incorporates all preceding paragraphs of this complaint as if set forth fully herein.

69.     Plaintiff and the class members are "consumers" within the meaning of N.J.S.A. §§ 56:12-15 and 16.

70.     Defendants are "sellers" of services within the meaning of N.J.S.A. §§ 56:12-15 and 16.

71.     By the acts alleged herein, Defendants violated N.J.S.A. § 56:12-16 because, in the course of their business, Defendants caused consumer notices and signs to be offered and

presented to Plaintiff and the class members which contained provisions that violated their clearly established legal rights under state law, within the meaning of N.J.S.A. § 56:12-15 and 16.

72.    Specifically, Defendants caused to be offered and presented to Plaintiff and the class written notices and signs which violate the clearly established rights of Plaintiff and the class under N.J.S.A. § 22A:4-14 to be charged no more than $2.50 to notarize documents of the type at issue.

73.    Moreover, Defendants caused to be offered and presented to Plaintiff and the class written notices and signs which violate the clearly established rights of Plaintiff and the class under N.J.S.A. § 56:8-2 of the New Jersey Consumer Fraud Act; a New Jersey statute which provides a right to be free of deceptive and unconscionable practices in the sale of services.

74.    Plaintiff and the class members seek an order for injunctive relief under TCCWNA pursuant to N.J.S.A. § 56:12-17, as described in detail herein, against Defendants.

75.    Due to the Defendants' conduct described herein, Plaintiff and the class members have suffered actual damages.

76.    Pursuant to N.J.S.A. § 56:12-17, Plaintiff also seek a statutory penalty of $100 for each class member, as well as actual damages and attorney's fees and costs.

## COUNT IV

### Unjust Enrichment/Disgorgement

77.    Plaintiff incorporates all preceding paragraphs as though fully set forth at length herein.

78.     Plaintiff brings, as an alternative theory of recovery, a claim for refunds on behalf of himself and the class under a theory of unjust enrichment and/or disgorgement.

79.     By the acts alleged herein, Defendants received a benefit from Plaintiff and the class in the form of monies paid by Plaintiff and the class to Defendants which were higher than the fees permitted by New Jersey law.

80.     The retention of that benefit by Defendants would be unjust.

81.     By the facts alleged herein, equity demands that Defendants disgorge themselves of this benefit.

## COUNT V

**Breach of Contract for Violation of the Implied Duty of Good Faith and Fair Dealing**

82.     Plaintiff incorporates all preceding paragraphs of this complaint as if set forth fully herein.

83.     There exists a contract between class members and Defendants relating to the sale of services.

84.     By operation of New Jersey law, there existed an implied duty of good faith and fair dealing in each such contract.

85.     By the acts alleged herein, Defendants have violated that duty of good faith and fair dealing by charging fees in excess of the maximum allowed by New Jersey law.

86.     As a result of this breach by Defendants, Plaintiff and each class member have suffered damages.

## COUNT VI

### Negligence

87.     Plaintiff incorporates all preceding paragraphs of this complaint as if set forth fully herein.

88.     Defendants owed a legal duty to Plaintiff and the class, including the duty to exercise the care that would be exercised by a reasonable person or entity under similar circumstances.

89.     That duty includes a duty to charge lawful rates for services.

90.     By the acts alleged herein, Defendants have breached their duty to Plaintiff and the class by charging fees in excess of the maximum allowed by New Jersey law.

91.     As a result of Defendants' breaches, Plaintiff and each class member have suffered damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff ask this Court to:

a.   Certify the case as a class action pursuant to Federal Rule of Civil Procedure 23;

b.   Enter an order for injunctive and declaratory relief, enjoining Defendants' unlawful policies as alleged herein, directing Defendants to send a court-approved form of notice to all class members advising them of these violations, and establishing a court-administered program to provide refunds to all class members, with the Defendants being ordered to pay the costs associated with such a program;

c.   Enter judgment in favor of each class member for damages suffered as a result of the conduct alleged herein, to include interest and pre-judgment interest;

d.   Award Plaintiff and the class members treble damages under the Consumer Fraud Act;

e.  Award Plaintiff and the class members a $100 per person statutory penalty under Truth in Consumer Contract, Warranty and Notice Act,

f.  Award Plaintiff reasonable attorneys' fees and costs; and

g.  Grant such other and further legal and equitable relief as the Court deems just and equitable.

## <u>JURY TRIAL DEMAND</u>

PLEASE TAKE NOTICE that the Plaintiff hereby demands a trial by jury as to all parties.

Dated:  August 23, 2022                    DeNITTIS OSEFCHEN PRINCE, P.C.

BY:  _____
                STEPHEN P. DENITTIS, ESQ. (031981997)
                JOSEPH A. OSEFCHEN, ESQ. (024751992)
                SHANE T. PRINCE, ESQ. (022412002)

                *Attorneys for Plaintiff*

# Exhibit A

# Durable Power of Attorney

**NOTICE:** THE POWERS GRANTED BY THIS DOCUMENT ARE BROAD AND SWEEPING. IF YOU HAVE ANY QUESTIONS ABOUT THESE POWERS, OBTAIN COMPETENT LEGAL ADVICE. THIS DOCUMENT DOES NOT AUTHORIZE ANYONE TO MAKE MEDICAL AND OTHER HEALTH-CARE DECISIONS FOR YOU. YOU MAY REVOKE THIS DURABLE POWER OF ATTORNEY IF YOU LATER WISH TO DO SO.

**Definition of Agent**

As used in this document, the term "Agent" shall include all agent(s), attorney(s)-in-fact, attorneys-in-fact / agents, and mandatary or mandataries who are appointed herein.

**TO ALL PERSONS,** be it known, that I, _Vincent Tripicchio_ , the undersigned Principal, who resides at _630 Garwood Road_ , City of _Moorestown_ , County of _Burlington_ , State of _New Jersey_ , do hereby appoint _Brenda Tripicchio_ as my Agent, and _____ as my Agent, who ☐ must act jointly ☒ may act separately on my behalf.

At the time of the execution of this Durable Power of Attorney, _Brenda Tripicchio_ resides at _630 Garwood Road_ , City of _Moorestown_ , County of _Burlington_ , State of _New Jersey_ .

At the time of the execution of this Durable Power of Attorney, _____ resides at _____ , City of _____ , County of _____ , State of _____ .

If one of my Agents is unable to serve for any reason, ☐ I authorize the remaining named Agent to act as my sole Agent OR ☐ I designate _____ , residing at _____ , City of _____ , County of _____ , State of _____ , to serve in that person's place.

If both of my Agents are unable to serve for any reason, I designate _____ , residing at _____ , City of _____ , County of _____ , State of _____ , as my Successor Agent.

**Grant of General Authority**

My Agent shall care for, manage, control, and handle all of my business, financial, property, and personal affairs in my name, place, and stead in as full and complete a manner in which I myself could do, if I were personally present, with respect to the following matters, to the extent that I am permitted by law to act through such a representative and subject to any limitations on or additions to the specified powers inserted after the following:

(**NOTICE:** The Principal must write his or her initials in the corresponding blank space for each of the subdivisions (A) through (M) below for which the Principal WANTS to give the Agent authority. If the corresponding blank space for any particular subdivision is NOT initialled, NO AUTHORITY WILL BE GRANTED for those matters specified in the subdivision. ALTERNATIVELY, the letter corresponding to each power the Principal wishes to grant has been referenced in subdivision "(N)", and the Principal may initial in the blank space to the left of subdivision "(N)" in order to grant each of the powers so indicated.)

( _W_ ) **(A) Real property transactions.** To lease, sell, mortgage, purchase, exchange, and acquire, and to agree, bargain, and contract for the lease, sale, purchase, exchange, and acquisition of, and to accept, take, receive, and possess any interest in real property whatsoever, on such terms and conditions, and under such covenants, as my Agent shall deem proper; and to maintain, repair, tear down, alter, rebuild, improve, manage, insure, move, rent, lease, sell, convey, subject to liens, mortgages, and security deeds, and in any way or manner deal with all or any part of any interest in real property whatsoever, including specifically, but without limitation, real property lying and being situated in the State of _New Jersey_ , under such terms and conditions, and under such covenants, as my Agent shall deem proper and may for all deferred payments accept purchase money notes payable to me and secured by mortgages or deeds to secure debt, and may from time to time collect and cancel any of said notes, mortgages, security interests, or deeds to secure debt.

( _W_ ) **(B) Tangible personal property transactions.** To lease, sell, mortgage, purchase, exchange, and acquire, and to agree, bargain, and contract for the lease, sale, purchase, exchange, and acquisition of, and to accept, take, receive, and possess any personal property whatsoever, tangible or intangible, or interest thereto, on such terms and conditions, and under such covenants, as my Agent shall deem proper; and to maintain, repair, improve, manage, insure, rent, lease, sell, convey, subject to liens or mortgages, or to take any other security interests in said property which are recognized under the Uniform Commercial Code as adopted at that time under the laws of the State of _New Jersey_ or any applicable state, or otherwise hypothecate (pledge), and in any way or manner deal with all or any part of any real or personal property whatsoever, tangible or intangible, or any interest therein, that I own at the time of execution or may thereafter acquire, under such terms and conditions, and under such covenants, as my Agent shall deem proper.

( _W_ ) **(C) Stock and bond transactions.** To purchase, sell, exchange, surrender, assign, redeem, vote at any meeting, or otherwise transfer any and all shares of stock, bonds, or other securities in any business, association, corporation, partnership, or other legal entity, whether private or public, now or hereafter belonging to me.

( _W_ ) **(D) Commodity and option transactions.** To buy, sell, exchange, assign, convey, settle, and exercise commodities futures contracts and call and put options on stocks and stock indices traded on a regulated options exchange and collect and receipt for all proceeds of any such transactions; establish or continue option accounts for the Principal with any securities or futures broker; and, in general, exercise all powers with respect to commodities and options which the Principal could if present and under no disability.

( ✗ ) **(E) Banking and other financial institution transactions.** To make, receive, sign, endorse, execute, acknowledge, deliver, and possess checks, drafts, bills of exchange, letters of credit, notes, stock certificates, withdrawal receipts, and deposit instruments relating to accounts or deposits in, or certificates of deposit of banks, savings and loans, credit unions, or other institutions or associations. To pay all sums of money, at any time or times, that may hereafter be owing by me upon any account, bill of exchange, check, draft, purchase, contract, note, or trade acceptance made, executed, endorsed, accepted, and delivered by me or for me in my name, by my Agent. To borrow from time to time such sums of money as my Agent may deem proper and execute promissory notes, security deeds or agreements, financing statements, or other security instruments in such form as the lender may request and renew said notes and security instruments from time to time in whole or in part. To have free access at any time or times to any safe deposit box or vault to which I might have access.

( ✗ ) **(F) Business operating transactions.** To conduct, engage in, and otherwise transact the affairs of any and all lawful business ventures of whatever nature or kind that I may now or hereafter be involved in. To organize or continue and conduct any business which term includes, without limitation, any farming, manufacturing, service, mining, retailing, or other type of business operation in any form, whether as a proprietorship, joint venture, partnership, corporation, trust, or other legal entity; operate, buy, sell, expand, contract, terminate, or liquidate any business; direct, control, supervise, manage, or participate in the operation of any business and engage, compensate, and discharge business managers, employees, agents, attorneys, accountants, and consultants; and, in general, exercise all powers with respect to business interests and operations which the Principal could if present and under no disability.

( ✗ ) **(G) Insurance and annuity transactions.** To exercise or perform any act, power, duty, right, or obligation, in regard to any contract of life, accident, health, disability, liability, or other type of insurance or any combination of insurance; and to procure new or additional contracts of insurance for me and to designate or change the beneficiary of same; provided, however, that my Agent cannot designate himself or herself as beneficiary of any such insurance contracts, unless the Agent is my spouse or only child.

( ✗ ) **(H) Estate, trust, and other beneficiary transactions.** To accept, receipt for, exercise, release, reject, renounce, assign, disclaim, demand, sue for, claim, and recover any legacy, bequest, devise, gift, or other property interest or payment due or payable to or for the Principal; assert any interest in and exercise any power over any trust, estate, or property subject to fiduciary control; establish a revocable trust solely for the benefit of the Principal that terminates at the death of the Principal and is then distributable to the legal representative of the estate of the Principal; and, in general, exercise all powers with respect to estates and trusts which the Principal could exercise if present and under no disability; provided, however, that the Agent may not make or change a will and may not revoke or amend a trust revocable or amendable by the Principal or require the trustee of any trust for the benefit of the Principal to pay income or Principal to the Agent unless specific authority to that end is given.

( ✗ ) **(I) Claims and litigation.** To commence, prosecute, discontinue, or defend all actions or other legal proceedings touching my property, real or personal, or any part thereof, or touching any matter in which I or my property, real or personal, may be in any way concerned. To defend, settle, adjust, make allowances, compound, submit to arbitration, and compromise all accounts, reckonings, claims, and demands whatsoever that now are, or hereafter shall be, pending between me and any person, firm, corporation, or other legal entity, in such manner and in all respects as my Agent shall deem proper.

(    ) **(J) Personal and family maintenance.** To hire accountants, attorneys at law, consultants, clerks, physicians, nurses, agents, servants, workmen, and others, and to remove them, and to appoint others in their place, and to pay and allow the persons so employed such salaries, wages, or other remunerations, as my Agent shall deem proper.

(    ) **(K) Benefits from Social Security, Medicare, Medicaid, or other governmental programs, or military service.** To prepare, sign, and file any claim or application for Social Security, unemployment, or military service benefits; sue for, settle, or abandon any claims to any benefit or assistance under any federal, state, local, or foreign statute or regulation; control, deposit to any account, collect, receipt for, and take title to and hold all benefits under any Social Security, unemployment, military service, or other state, federal, local or foreign statute or regulation; and, in general, exercise all powers with respect to Social Security, unemployment, military service, and governmental benefits, including but not limited to Medicare and Medicaid, which the Principal could exercise if present and under no disability.

(    ) **(L) Retirement plan transactions.** To contribute to, withdraw from, and deposit funds in any type of retirement plan (which term includes, without limitation, any tax qualified or nonqualified pension, profit sharing, stock bonus, employee savings, and other retirement plan, individual retirement account, deferred compensation plan, and any other type of employee benefit plan); select and change payment options for the Principal under any retirement plan; make rollover contributions from any retirement plan to other retirement plans or individual retirement accounts; exercise all investment powers available under any type of self-directed retirement plan; and, in general, exercise all powers with respect to retirement plans and retirement plan account balances which the Principal could if present and under no disability.

(    ) **(M) Tax matters.** To prepare, to make elections, to execute, and to file all tax, Social Security, unemployment insurance, and informational returns required by the laws of the United States, or of any state or subdivision thereof, or of any foreign government; to prepare, to execute, and to file all other papers and instruments which the Agent shall think to be desirable or necessary for safeguarding of me against excess or illegal taxation or against penalties imposed for claimed violation of any law or other governmental regulation; and to pay, to compromise, or to contest or to apply for refunds in connection with any taxes or assessments for which I am or may be liable.

(____) **(N) ALL OF THE MATTERS LISTED ABOVE.** YOU NEED NOT INITIAL ANY OTHER LINES IF YOU INITIAL LINE (N).

**Grant of Specific Authority (Optional)**

My Agent MAY NOT do any of the following specific acts for me UNLESS I have INITIALED the specific authority listed below:

(CAUTION: Granting any of the following will give your Agent the authority to take actions that could significantly reduce your property or change how your property is distributed at your death. INITIAL ONLY the specific authority you WANT to give your Agent.)

(____) Create, amend, revoke or terminate an inter vivos trust.
(____) Make a gift.
(____) Create or change rights of survivorship.
(____) Create or change a beneficiary designation.
(____) Authorize another person to exercise the authority granted under this Durable Power of Attorney.

(_____) Waive the Principal's right to be a beneficiary of a joint and survivor annuity, including a survivor benefit under a retirement plan.

(_____) Exercise fiduciary powers that the Principal has authority to delegate.

(_____) Disclaim or refuse an interest in property, including a power of appointment.

**Limitation on Agent's Authority**

An Agent that is not my ancestor, spouse, or descendant MAY NOT use my property to benefit the Agent or a person to whom the Agent owes an obligation of support unless I have included that authority in the Special Instructions.

**Special Instructions (Optional)**

Additional powers, if any, that are not inconsistent with the other provisions of this Durable Power of Attorney:

_____

_____

_____

The powers granted hereinabove shall not include the following powers or shall be modified or limited in the following particulars:

_____

_____

_____

Additional powers, if any, granted to the Agent with respect to any power listed above and not eliminated/struck out by the Principal:

_____

_____

_____

**Special Instructions for Gifts**

Special instructions applicable to gifts (initial in front of the following sentence to have it apply):

(_____) I grant my Agent the power to apply my property to make gifts to individuals, charities, or to the Agent, up to the amount of $500 per year, per individual or entity, without signature of the Principal, as the Agent determines to be in the Principal's best interest.

Authorization for an Agent to make gifts or transfers of $500 or more requires the Principal to execute a Major Gifts Rider at the same time as the Durable Power of Attorney document.

(_____) I grant my Agent the power to make major gifts and transfers of my property set forth under the Major Gifts Rider.

**Nomination of Guardian or Conservator (Optional)**

In the event that a court decides that it is necessary to appoint a Guardian of my person or Conservator of my estate, I hereby nominate _____ , who resides at _____ , City of _____ , County of _____ , State of _____ , to be considered by the court for appointment to serve as my Guardian or Conservator, or in any similar representative capacity.

**Effective Date [Choose one and only one option.]**
(____) This Durable Power of Attorney shall be effective immediately.

(____) This Durable Power of Attorney shall take effect in the event that I become mentally and/or physically incapacitated, as determined and certified in writing by my treating physician, to such an extent that I am unable to independently make important decisions in regard to the management of my own property and finances.

**Durable Provision**
This Durable Power of Attorney shall not be affected by any lapse of time, and shall not be affected by the subsequent incapacity of the Principal except as provided by statute in the State of _New Jersey_, and all acts done by the Agent under the power granted herein during any period of the Principal's disability or incapacity shall have the same effect and inure to the benefit of and bind the Principal and Principal's successors in interest as if the Principal were competent and not disabled.

My Agent hereby accepts this appointment subject to its terms and agrees to act and perform in the said fiduciary capacity and observe the standards of care applicable to trustees as described by relevant _New Jersey_ statute consistent with my best interests as his, her, or their best discretion deem advisable, and I affirm and ratify all acts so undertaken.

If the Agent is a corporate Agent, the Agent shall not use my assets for its benefit, nor the benefit of its officers or directors.

If this Durable Power of Attorney is revoked or terminated, such revocation or termination for any reason in accordance with law shall be ineffective as to any Agent unless and until actual notice or knowledge of such revocation or termination shall have been received by the Agent.

My subsequent death shall not revoke or terminate the agency granted herein as to my Agent who, without actual knowledge of my death, acts in good faith under this Durable Power of Attorney. Any action so taken, unless otherwise invalid or unenforceable, shall bind my successors in interest.

**Notice to Third Parties**
To induce any third-party to act hereunder, I hereby agree that any third-party receiving a duly executed copy or facsimile of this instrument may act hereunder, and that revocation or termination shall have been received by such third-party, and I for myself and for my heirs, executors, legal representatives, and assigns, hereby agree to indemnify and hold harmless any such third-party from and against any and all claims which may arise against such third-party by reason of such third-party having relied on the provisions of this instrument.

THIS DURABLE POWER OF ATTORNEY MAY BE REVOKED OR AMENDED IN WRITING BY ME AT ANY TIME.

_10-13-20_ (date)

_Vincent Tripicchio_ , Principal

_Heather M. Shenton_    _10/13/20_ (date)
First Witness    Heather Shenton

_Christopher Sabb_    _10/13/20_ (date)
Second Witness

A Notary Public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF _New Jersey_ )
COUNTY OF _Camden_ )

On _October 13_ , 20 _20_ , before me, _Lorrianne Zamora_ , a Notary Public, personally appeared _Vincent Tripicchio_ , as Principal, and _Heather Shenton_ , as Witness, and _Christopher Sabb_ , as Witness, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _New Jersey_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature of Notary

Affiant ____ Known _X_ Produced ID

Type of ID _New Jersey Driver's License_

(Seal)

LORRIANNE Q. ZAMORA
Commission # 2415125
Notary Public, State of New Jersey
My Commission Expires
December 1, 2021

**AGENT'S SIGNATURE AND ACKNOWLEDGMENT**

**First Agent Acknowledgment**

I, _____ , am the person identified as the Agent for the Principal named in this document and acknowledge my legal duties.

_____        _____
Date                           Signature

**Second Agent Acknowledgment (if applicable)**

I, _____ , am the person identified as the Agent for the Principal named in this document and acknowledge my legal duties.

_____        _____
Date                           Signature

# Exhibit B

```
                          The UPS Store - #1155
                             3111 Route 38
                               Suite 11
                          Mt. Laurel, NJ 08054
                            (856) 234-7447


                          10/13/20  11:36 AM

                       We are the one stop for all your
                     shipping, postal and business needs.

                       We offer all the services you need
                         to keep your business going.
```

|||||||||||||||||||||||||||||||||||||||||

```
001 000003 (011)                TO $    2.50
    Notary
002 500282 (011) ****S****      TO $   12.50
    Notary  Convenience


                    SubTotal  $   15.00
                       Total  $   15.00


            AMERICAN EXPRESS   $   15.00
ACCOUNT NUMBER *       ************3013
Appr Code: 823623  (I)  Sale

ENTRY METHOD: ChipRead
MODE: Issuer
AID: A000000025010801
TVR: 0800008000
TSI: F800
AC: D430AA7F14021EE8
ARC: 00


Receipt ID 83337782641592888372 002 Items
CSH: Lorrianne          Tran: 6932 Reg: 001


               Thank you for visiting our store.
                Please come back again soon.


             Whatever your business and personal
               needs, we are here to serve you.


                     We're here to help.
            Join our FREE email program to receive
                  great offers and resources.


                  www.theupsstore.com/signup
```