<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| VINCENT TRIPICCHIO, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> THE UPS STORE, INC. and JB & A ENTERPRISES, INC., <br><br> Defendants. | Civil Action No. 21-14512 (MAS) (DEA) <br><br> **MEMORANDUM OPINION** |

<u>**SHIPP, District Judge**</u>

**THIS MATTER** comes before the Court upon a motion to dismiss the Amended Complaint of Plaintiff Vincent Tripicchio ("Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by Defendants The UPS Store, Inc. and JB & A Enterprises, Inc. ("Defendants"). (ECF No. 60.) Plaintiff opposed the motion (ECF No. 66), and Defendants replied (ECF No. 69). For the reasons set forth below, Defendants' motion to dismiss is **DENIED in part** and **GRANTED in part**. Defendants' motion to dismiss is **DENIED** as to Counts I–III and **GRANTED** as to Counts IV–VI.

## I.      <u>BACKGROUND</u>

New Jersey law sets the maximum allowable fee for notarization of a document that does not relate to the transfer or financing of real estate at $2.50. *See* N.J.S.A. § 22A:4-14. Despite this mandate, according to Plaintiff, Defendants employ a policy of allowing charges for notary services that exceed the statutory maximum. Plaintiff brings this putative class action on behalf of

himself and other similarly situated individuals who were charged purportedly excessive notarial service fees at The UPS Store locations in New Jersey in violation of N.J.S.A. § 22A:4-14. (*See generally* Am. Compl., ECF No. 58.) As set forth in greater detail below, since its inception, this case has been litigated alongside a related class action suit, *McLaren v. The UPS Store, Inc.*, No. 21-14424 (the "*McLaren* Action"), which is also now pending before this Court.

A.    **Factual Background**

For purposes of the present motion to dismiss, the factual allegations set forth in Plaintiff's Amended Complaint are taken as true. (*See* Am. Compl.) Plaintiff is a New Jersey citizen, residing in Moorestown, New Jersey. (*Id.* ¶ 9.) Defendant The UPS Store, Inc. is a Delaware corporation, headquartered in San Diego, California. (*Id.* ¶ 10.) Defendant JB & A Enterprises, Inc., a New Jersey corporation with its principal place of business in Mount Laurel, New Jersey, is the nominal owner and operator of UPS Store #1155 in Mount Laurel, New Jersey. (*Id.* ¶ 11.) Defendant The UPS Store, Inc. has a franchise relationship with Defendant JB & A Enterprises, Inc. (*Id.* ¶ 12.)

According to Plaintiff, as a uniform policy, each UPS Store in New Jersey offers notary services to customers. (*Id.* ¶ 15.) Plaintiff alleges that the notary services performed by Defendants' employees are almost exclusively for purposes unrelated to the transfer or financing of real estate, such as notarizing power of attorney documents, wills, and affidavits. (*Id.* ¶ 18.) Under New Jersey law, a notary may charge a fee of no more than $2.50 for notarizing any document that does not relate to the transfer or financing of real estate. (*Id.* ¶ 21.) On October 13, 2020, however, Plaintiff visited UPS Store #1155 and was charged $15 by Defendants for the notarization of a durable power of attorney document. (*Id.* ¶¶ 33-35.) The receipt from that transaction lists a $2.50 "Notary" fee and a $12.50 "Notary Convenience" fee. (*Id.* ¶ 35, Ex. B.)

Plaintiff alleges that Defendants routinely overcharge for notary services by "splitting the $15 notary fee into a $2.50 'Notary' fee and a $12.50 'Notary Convenience' fee" in violation of New Jersey law. (*Id.* ¶ 28.) Plaintiff further alleges that "Defendants retain all of the notary fees collected from customers, including both the 'Notary' charge and the 'Notary Convenience' fee," and that "[n]o portion of said fees are shared with Defendants' employees who are the commissioned notary publics." (*Id.* ¶ 26.) As such, "the $12.50 'Notary Convenience' fee is plainly not . . . for any actual expense or service" because the "additional notary fee is being charged inside the UPS Store where the notary works" and "no additional services are being performed beyond simply notarizing the documents at issue." (*Id.* ¶ 29.) According to Plaintiff, this policy "is not limited to UPS Store #1115 and is in fact followed by all UPS stores in New Jersey with the knowledge and consent of Defendant The UPS Store, Inc." (*Id.* ¶ 30.)

Based on these allegations, Plaintiff seeks to represent a proposed class of "[a]ll persons who, between November 30, 2014 and the present, were charged a fee of more than $2.50 for notarizing any document not related to the transfer or financing of real estate at a UPS Store in New Jersey." (*Id.* ¶ 39.) In addition, Plaintiff also seeks certification of a sub-class, defined as "[a]ll persons who, between November 30, 2014 and the present, were charged a fee in excess of $2.50 for having a power of attorney document, will, affidavit, or other document not related to the transfer or financing of real estate notarized at UPS Store #1155, in Mount Laurel, New Jersey." (*Id.* ¶ 40.)

### B.      Procedural History

Plaintiff originally filed suit in the Superior Court of New Jersey, Law Division, Burlington County, on November 16, 2020. (*See* Notice of Removal ¶ 1, ECF No. 1.) At the time of Plaintiff's filing, the first-filed *McLaren* Action was pending in the Superior Court of New Jersey, Law

Division, Mercer County. In the *McLaren* Action, the plaintiff similarly asserts claims on behalf of herself and a putative class of consumers of notary services for violations of N.J.S.A. § 22A:4-14 by The UPS Store, Inc. and its New Jersey franchisees. Both cases were ultimately removed to this Court pursuant to the Class Action Fairness Act of 2005 ("CAFA"). (*See id.*) Prior to the removal of the class action suits, the New Jersey Appellate Division issued an opinion addressing an interlocutory appeal in the *McLaren* Action, which "conclud[ed] that [N.J.S.A. § 22A:4-14] confers no private cause of action," but reached no conclusion as to whether that fact barred causes of action arising under other statutes or the common law. (*See* ECF No. 5-4.) Once removed, the Court granted motions to remand both in this case and the *McLaren* Action on the ground that removal was untimely. (*See* ECF No. 22.) The Third Circuit reversed and instructed that the Court consider the applicability of the "local controversy" exception to CAFA in each action. *See McLaren v. UPS Store, Inc.*, 32 F.4th 232 (3d Cir. 2022). Following a 30-day period of jurisdictional discovery, Plaintiff advised the Court he would not contest federal jurisdiction under CAFA[1] and requested leave to file an amended complaint, which the Court granted. (*See* ECF No. 57.)

On August 23, 2022, Plaintiff filed his Amended Complaint, asserting six causes of action, on behalf of himself and the putative class and sub-class, against Defendants: (I) declaratory judgment under N.J.S.A. § 2A:16-51, *et seq.*; (II) violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-1, *et seq.*; (III) violation of the Truth in Consumer Contract, Warranty, and Notice Act ("TCCWNA"), N.J.S.A. § 56:12-14, *et seq.*; (IV) unjust enrichment/disgorgement; (V) breach of contract; and (VI) negligence. (*See* Am. Compl. ¶¶ 59-91.) Defendants moved to

---

[1] In the *McLaren* Action, the plaintiff chose to contest federal jurisdiction pursuant to the local controversy exception to CAFA, filing a second motion to remand following the period of jurisdictional discovery. *See McLaren* Action, ECF No. 64.

dismiss the Amended Complaint on September 20, 2022. (*See* Defs.' Moving Br., ECF No. 60-1.) Plaintiff opposed the motion.[2] (*See* Pl.'s Opp'n Br., ECF No. 66.)  Defendants filed a reply on November 14, 2022. (*See* Defs.' Reply Br., ECF No. 69.)

## II.      **LEGAL STANDARD**

Courts undertake a three-part analysis when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)) (alteration in original). Second, the court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quotation omitted). In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state, "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[M]ere restatements of the elements of [a] claim[ ] . . . are not entitled to the assumption of truth." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) (alterations in original) (quotation omitted). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted).

---

[2] On October 19, 2022, counsel for the plaintiff in the *McLaren* Action, joined by Plaintiff Tripicchio, wrote to inform the Court that plaintiffs in both actions and their counsel had conferred and agreed that these related and substantively overlapping cases would be best served if lead counsel in the *McLaren* Action also took over representation of Plaintiff Tripicchio. (*See* ECF No. 62.) Plaintiff Tripicchio's counsel subsequently filed an appropriate substitution of counsel form. (*See* ECF No. 63.)

## III.   **DISCUSSION**

Defendants move to dismiss Plaintiff's Amended Complaint, arguing that "there is no private right of action for an alleged violation of Section 22A:4-14," and thus Plaintiff's claims must fail because "if the legislature has not provided for a private right of action for an alleged violation of a statute, other causes of action based on an alleged violation of that statute likewise fail." (*See* Defs.' Moving Br. at 2.) In support of this argument, Defendants point to *Castro v. Sovran Self Storage, Inc.*, 114 F. Supp. 3d 204 (D.N.J. 2015), in which the district court dismissed claims under the NJCFA and TCCWNA on the ground that the claims were premised on violations of the New Jersey Insurance Producer Licensing Act ("IPLA"), which does not provide for a private right of action. (*See id.* at 8-11.) Defendants highlight that in the *McLaren* Action, the New Jersey Superior Court, Appellate Division expressly held that N.J.S.A. § 22A:4-14 "confers no private cause of action on plaintiff," *McLaren v. UPS Store, Inc.*, No. A-1612-20, 2021 WL 3085151, at *8 (N.J. App. Div. July 22, 2021), and that, under the principles espoused in *Castro*, that fact precludes Plaintiff from pursuing "backdoor" enforcement of the statute governing notary services fees through use of New Jersey's consumer protection laws and the common law. (*See id.*) In addition, the lack of a private right of action under N.J.S.A. § 22A:4-14 notwithstanding, Defendants argue that Plaintiff has not sufficiently alleged facts supporting the six causes of action set forth in the Amended Complaint. (*See id.* at 7-17.)

In opposition, Plaintiff contends that his causes of action under New Jersey's consumer protection laws and the common law, predicated on violations of N.J.S.A. § 22A:4-14, are viable regardless of whether N.J.S.A. § 22A:4-14 provides a private right of action. (*See* Pl.'s Opp'n Br. at 2-4.) Specifically, Plaintiff argues that the great weight of authority, both among New Jersey state courts and within this District, demonstrates that violations of a statutory or regulatory

mandate can give rise to claims under consumer protection statutes or common law theories, even where the underlying statutory or regulatory scheme that was violated does not provide for private right of action. (*See id.* at 14-22.) Plaintiff also asserts that the allegations underpinning the causes of action in the Amended Complaint are sufficient to survive Defendants' motion to dismiss. (*See id.* at 22-35.)

### A.    Lack of a Private Right of Action for Violations of N.J.S.A. § 22A:4-14

Prior to removal of the *McLaren* Action, the New Jersey Superior Court, Appellate Division, reviewed the lower court's denial of a motion to dismiss and addressed (i) whether N.J.S.A. § 22A:4-14 sets a minimum or maximum fee for notary services and (ii) whether there is a private right of action for violation of N.J.S.A. § 22A:4-14. *McLaren*, 2021 WL 3085151, at *2. The Appellate Division held that (i) "the fees for notarial services set by [N.J.S.A. § 22A:4-14] are the maximum fees that may be charged" and (ii) "[N.J.S.A. § 22A:4-14] confers no private cause of action." *Id.* at *7-8. Given the limited nature of its interlocutory review, the Appellate Division "reach[ed] no conclusion" as to whether the lack of a private right of action barred claims for violations of N.J.S.A. § 22A:4-14 under NJCFA or common law theories. *See id.* at *8. As such, the *McLaren* decision does not operate as an authority barring Plaintiff's claims.

Nevertheless, Defendants assert that Plaintiff's claims under the NJCFA, TCCWNA, and the common law are precluded. According to Defendants, the claims asserted by Plaintiff are analogous to those asserted in *Castro*. 144 F. Supp. 3d at 281. In *Castro*, the district court rejected claims under NJCFA and TCCWNA for violations of the IPLA, which does not provide for a private right of action, because "courts have prohibited the use of New Jersey's consumer protection statutes to pursue the backdoor enforcement of IPLA." *Id.* But Defendants' reading of *Castro* is overbroad and does not necessarily prevent the operation of N.J.S.A. § 22A:4-14 in

conjunction with New Jersey's consumer protection statutes and the common law, particularly given the absence of any binding authority so holding. A brief summary of the law illustrates Defendants' error.

The NJCFA "provide[s] a private right of action for any unconscionable commercial practice or fraud in connection with the sale of any merchandise." *Korrow v. Aaron's, Inc.*, No. 10-6317, 2011 WL 3794231, at *2 (D.N.J. Aug. 25, 2011) (citing N.J.S.A. §§ 56:8-2, 56:8-2.11). "The statute also instructs that it should be applied in conjunction with other statutes or common law: 'The rights, remedies and prohibitions accorded by the provisions of this act are hereby declared to be in addition to and cumulative of any other right, remedy or prohibition accorded by the common law or statutes of this State.'" *Id.* (citing N.J.S.A. § 56:8-2.13). "TCCWNA also provides a private right of action, against any party that offers or enters into a written contract that contains 'any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law.'" *Id.* at *3 (citing N.J.S.A. §§ 56:12-15, 56:12-17). And "[i]t contains a near identical provision to the CFA instructing that it should be applied in conjunction with other statutes or common law." *Id.* (citing N.J.S.A. § 56:12-18).

Because of the comprehensive reach of New Jersey consumer protection law, the New Jersey Supreme Court has stated it is "loathe to undermine the CFA's enforcement structure, which specifically contemplates cumulative remedies and private attorneys general, by carving out exemptions for each allegedly fraudulent practice that may concomitantly be regulated by another source of law." *Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 150 N.J. 255, 270 (1997). Therefore, "[i]n order to overcome the presumption that the CFA applies to a covered activity, a court must be satisfied . . . that a direct and unavoidable conflict exists between application of the CFA and

application of the other regulatory scheme or schemes." *Id.* In other words, the court "must be convinced that the other source or sources of regulation deal specifically, concretely, and pervasively with the particular activity, implying a legislative intent not to subject parties to multiple regulations that, as applied, will work at cross-purposes." *Id.*

Based on this instruction, courts have concluded that violations of the IPLA, which lacks a private right of action, cannot support a claim under the NJCFA because "[the IPLA] make[s] plain that enforcement of the licensing provisions relating to the sale of insurance products is for the Commissioner [of the Department of Banking and Insurance]." *Henderson v. Hertz Corp.*, 2005 WL 4127090, at *5 (N.J. App. Div. June 22, 2006); *see Castro*, 114 F. Supp. 3d at 218 (dismissing claims under the NJCFA and TCCWNA predicated on IPLA violations because the "IPLA provides no private cause of action and the consumer fraud statutes cannot provide a 'backdoor' to do so"). In contrast, however, courts have also found that violations of the New Jersey Retail Installment Sales Act ("RISA"), which lacks a private right of action, can support claims under the NJCFA and TCCWNA as there is no conflict among the statutory enforcement schemes. *See Korrow*, 2011 WL 3794231, at *2-3 (holding that RISA claims may be "asserted under the CFA" and "by alleging RISA violations under TCCWNA, Plaintiff has stated a claim that survives [a] motion to dismiss"); *United Consumer Fin. Servs. Co. v. Carbo*, 410 N.J. Super. 280, 306 (App. Div. 2009) (holding that RISA violation "gave rise to a private right of action . . . pursuant to the [TCCWNA]"); *see also Perez v. Rent-A-Center, Inc.*, 186 N.J. 188, 220 (2006) (finding a lack of "any conflict between the CFA and RISA, let alone one of a direct and unavoidable nature").

Viewed in this context, Defendants' assertion that the Appellate Division's holding in *McLaren* precludes Plaintiff's claims here misses the mark. Although the Appellate Division

concluded that N.J.S.A. § 22A:4-14 does not confer a private right of action, it expressly reached "no conclusion" as to whether violation of N.J.S.A. § 22A:4-14 can support a cause of action under New Jersey's consumer protection statutes or the common law. *See McLaren*, 2021 WL 3085151, at *8. Similarly, the Appellate Division made no finding as to whether the statutory scheme governing notaries in New Jersey conflicts in any way with the NJCFA or TCCWNA.[3] Other than arguing that N.J.S.A. § 22A:4-14 lacks a private right of action, Defendants make no attempt to identify a conflict between the laws governing notaries and the New Jersey consumer protection statutes. That is insufficient, even under the case law relied upon by Defendants. *Cf. Henderson*, 2005 WL 4127090, at *6 (no NJCFA claim based on IPLA violation because "the Court has not altered its conclusion that a conflict between the regulatory scheme and the asserted private remedy compels the latter to give way to the former").

In fact, as Plaintiff highlights, the statutory scheme governing notaries in New Jersey, the Notaries Public Act ("NPA"), N.J.S.A. § 52:7-10 *et seq.*, explicitly provides that the authority of the State Treasurer to discipline and remove a notary from his office "shall not prevent a person aggrieved by the actions of a notary public from seeking other criminal or civil remedies provided by law." N.J.S.A. § 52:7-10(c). Read in conjunction with the broad scope of the NJCFA and TCCWNA noted above, the Court does not perceive any conflict among the statutory schemes so as to preclude Plaintiff's causes of action premised on alleged violations of N.J.S.A. § 22A:4-14. *See Kayal v. Signal Hill Realty Corp.*, No. 17-3565, 2018 WL 4110950, at *4 (D.N.J. Aug. 29, 2018) ("Unlawful acts expressly regulated by other statutes, regulations, or rules not promulgated

---

[3] In *McLaren*, the Appellate Division "noted the complex statutory scheme governing notaries public . . . and the power of the State Treasurer to remove a notary from his office at the Treasurer's pleasure." 2021 WL 3085151, at *8. But it offered no opinion as to whether that scheme conflicted with causes of action under New Jersey consumer protection laws or the common law. *Id.*

under the CFA can give rise to a CFA claim.") (citing *Lemelledo*, 150 N.J. at 264-75). Plaintiff's claims are, therefore, not barred as a matter of law due to the Appellate Division's ruling in *McLaren* that N.J.S.A. § 22A:4-14 lacks a private right of action. Defendants' motion to dismiss is denied in this respect.

### B.    Plaintiff's Causes of Action

While the lack of a private right of action under N.J.S.A. § 22A:4-14 is the foundation for Defendants' motion to dismiss, Defendants offer several alternative arguments for dismissal of Plaintiff's claims. Those arguments are addressed in turn below.

#### 1.    Declaratory Judgment (Count I)

Defendants argue that Plaintiff's cause of action for a declaratory judgment should be dismissed because the Declaratory Judgment Act, 28 U.S.C. § 2201, is not a standalone source of rights and declaratory judgment may only be sought in connection with one or more substantive claims. (*See* Defs.' Moving Br. at 7-8.) Plaintiff contends that even if he cannot maintain a claim for declaratory relief as a standalone, independent claim, it is still properly pled as a remedy to one or more of the other five causes of action. (*See* Pl.'s Opp'n Br. at 11-13.)

Plaintiff's claim for declaratory judgment is brought under the New Jersey Declaratory Judgment Act, N.J.S.A. § 2A:16-51, *et seq.*   (*See* Am. Compl. ¶¶ 59-63.)   But, as Plaintiff concedes, the federal Declaratory Judgment Act, 28 U.S.C. § 2201, applies in federal court. *See, e.g.*, *Kemper Ins. Co. v. Rauscher*, 807 F.2d 345 (3d Cir. 1986) ("It is settled law that, as a procedural remedy, the federal rules respecting declaratory judgment actions apply in diversity cases."); *Muhlbaier v. Specialized Loan Servicing LLC*, No. 18-00125, 2018 WL 3238832, at *2 (D.N.J. July 3, 2018) (explaining that "when a declaratory judgment action has been removed to federal court, it is treated as though it had been filed under the federal declaratory judgment act") (citation omitted). "That Act is not a standalone source of rights, but a procedural vehicle for

litigants to seek a declaration of their rights under some other law." *MedWell, LLC v. Cigna Corp.*, No. 20-10627, 2021 WL 2010582, at *2 (D.N.J. May 19, 2021) (citing *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 628 (3d Cir. 2013); *In re: Lamictal Indirect Purchaser & Antitrust Consumer Litig.*, 172 F. Supp. 3d 724, 740 (D.N.J. 2016)). Thus, while Plaintiff may not pursue declaratory relief alone, Plaintiff "may seek a declaratory judgment as a remedy in connection with one or more of [his] substantive claims." *Id.* Indeed, Plaintiff incorporates his claim for declaratory relief into each of his other enumerated causes of action. (*See* Am. Compl. ¶¶ 64, 68, 77, 82, 87.) For this reason, rather than dismiss Count I, the Court will construe Plaintiff's claim for declaratory relief as seeking such a remedy in connection with the other causes of action. Defendants' motion to dismiss is therefore denied as to Count I.

   2. *NJCFA (Count II)*

   Defendants argue in the alternative that Plaintiff fails to state a claim under the NJCFA because the provision of notary services to the public in New Jersey is not a "commercial practice" "in connection with the sale or advertisement of any merchandise or real estate" within the meaning of the statute. (*See* Defs.' Moving Br. at 9 (citing N.J.S.A. § 56:8-2).) According to Defendants, "[a] notary public is a public officer providing a public service, who is not engaged in the commercial practice of selling merchandise." *Id.* This argument is unavailing in light of the broad protections afforded by the NJCFA and the conduct in which Defendants are alleged to have engaged.

   The NJCFA provides in relevant part:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such

> person as aforesaid, whether or not any person has in fact been misled,
> deceived or damaged thereby, is declared to be an unlawful practice.

N.J.S.A. § 56:8-2. The law further states that "[t]he term 'merchandise' shall include any objects,
wares, goods, commodities, services or anything offered, directly or indirectly to the public for
sale." N.J.S.A. § 56:8-1(c). To state a claim under the NJCFA, a plaintiff must demonstrate
"1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal
relationship between the unlawful conduct and the ascertainable loss." *Bosland v. Warnock Dodge,
Inc.*, 197 N.J. 543, 557 (2009). New Jersey courts have repeatedly emphasized that the NJCFA
provides strong, far-reaching consumer protections. *See All the Way Towing, LLC v. Bucks Cnty.
Int'l, Inc.*, 236 N.J. 431, 434 (2019) ("In light of the CFA's remedial purpose, courts liberally
enforce the Act to fulfill its objective to protect consumers from prohibited unconscionable acts
by sellers."); *Furst v. Einstein Moomjy, Inc.*, 182 N.J. 1, 11-12 (2004) ("The [CFA] is remedial
legislation that we construe liberally to accomplish its broad purpose of safeguarding the public.").

Here, Defendants challenge whether charging fees in excess of the N.J.S.A. § 22A:4-14
statutory maximum for notary services amounts to unlawful conduct under the NJCFA.
Defendants' argument rests almost entirely on the New Jersey Appellate Division's statement that
the "assumption that a violation of [N.J.S.A. § 22A:4-14] is per se a violation of the CFA fails to
recognize the difference between services provided by a public officer — an individual notary
public — and a purveyor of consumer goods and services." *McLaren*, 2021 WL 3085151, at *8.
But this single statement, taken out of context, hardly precludes Defendants' alleged conduct from
qualifying as unlawful under the NJCFA. As noted above, the NJCFA covers commercial practices
in connection with "any . . . services . . . offered, directly or indirectly to the public for sale."
N.J.S.A. § 56:8-1(c). Defendants do not convincingly argue that the marketing and provision of
notarial services by Defendants for revenue cannot fall within this broad scope. Moreover,

Defendants conveniently ignore that, in the same breath, the Appellate Division also acknowledged that "[The UPS Store, Inc.] and the other franchisees are providing a service to the public" such that the NJCFA may apply. *McLaren*, 2021 WL 3085151, at *8. The fact that individual notaries are technically public officers who derive their authority from the State of New Jersey does not automatically exempt Defendants, which are plainly commercial business entities that employ and control the notaries, from liability under the NJCFA for services for which they charge a fee and collect revenue. Moreover, taking Plaintiff's allegation as true, as the Court must at this stage, "Defendants retain all of the notary fees collected from customers" and "[n]o portion of said fees are shared with Defendants' employees who are the commissioned notary publics." (Am. Compl. ¶ 26.) Importantly, Defendants do not dispute that the fees they charged for notarial services, on their face, exceeded the statutory maximum under N.J.S.A. § 22A:4-14. *See McLaren*, 2021 WL 3085151, at *6. Rather, Defendants attempt to carve out a special exemption to the NJCFA that no court has held exists.

Because Plaintiff sufficiently alleges that Defendants are engaged in the commercial sale and marketing of notary services to the public, their conduct is covered by the NJCFA. This understanding is consistent with the liberal construction courts must afford the NJCFA. *See All the Way Towing, LLC*, 236 N.J. at 434. Having alleged that Defendants engaged in the commercial practice of charging notary fees in excess of the statutory maximum set forth in N.J.S.A. § 22A:4-14, Plaintiff has asserted a claim under the NJCFA sufficient to survive the present motion dismiss. As such, Defendants' motion as to Count II is denied.

To be clear, however, in finding that Plaintiff's NJCFA claim survives Defendants' motion to dismiss, the Court does not hold that a violation of N.J.S.A. § 22A:4-14 amounts to a *per se* violation of the NJCFA, or that a notary public is necessarily subject to suit under the NJCFA.

Rather, accepting Plaintiff's allegations as true, Defendants, acting as business entities, commercialized the provision of notary services through their control over the pricing of such services, control over the employees administering the services, and retention of all revenue generated by the notary fees charged to consumers. Notably, beyond the pleadings stage, mere allegations as to Defendants' conduct will be insufficient to sustain a cause of action under the NJCFA.

### 3.   *TCCWNA (Count III)*

Defendants do not offer any alternative arguments for dismissal of Plaintiff's TCCWNA claim in their moving brief, but, on reply, make several conclusory assertions that Plaintiff has failed to satisfy the elements of a TCCWNA claim. (*See* Defs.' Reply Br. at 11-12.) "TCCWNA creates liability whenever a seller presents a consumer with a covered writing that 'contains terms contrary to any established state or federal right of the consumer.'" *Watkins v. DineEquity, Inc.*, 591 F. App'x 132, 135 (3d Cir. 2014) (quoting *Shelton v. Restaurant.com*, 214 N.J. 419, 443 (2013)). "To state a claim under TCCWNA, a plaintiff must allege each of four elements: (1) the plaintiff is a consumer; (2) the defendant is a seller; (3) the 'seller offers a consumer a contract' or gives or displays any written notice, or sign; and (4) the contract, notice or sign includes a provision that 'violate[s] any legal right of a consumer' or responsibility of a seller." *Id.* (citing *Bosland v. Warnock Dodge, Inc.*, 396 N.J. Super. 267 (N.J. App. Div. 2007)).  The first three elements are plainly satisfied here: (1) Plaintiff is a consumer; (2) Defendants are sellers, as established above; and (3) Defendants offer notary services for fees evidenced in writing.  As to whether the notary fees charged by Defendants amount to a violation of the legal rights of consumers, the New Jersey Supreme Court has squarely held that "a TCCWNA violation may be premised on the violation of a regulation" and that there is "no support in the TCCWNA or in case law for the proposition that regulations cannot serve as the source of a consumer's 'clearly established legal right' or a

'responsibility of a seller.'" *Spade v. Select Comfort Corp.*, 232 N.J. 504, 519 (2018). As such, at the pleading stage, Plaintiff's allegations that Defendants' notary fees exceed the N.J.S.A. § 22A:4-14 statutory maximum are sufficient to show a violation of a clearly established legal right of consumers.[4] Alternatively, the Court finds that Plaintiff's claim for violation of the NJCFA may serve as a predicate for his TCCWNA claim. *See Watkins*, 591 F. App'x at 134 ("The rights and responsibilities to be enforced by TCCWNA are drawn from other legislation. One such piece of legislation is the CFA."). Thus, Defendants' motion as to Count III is denied.

### 4.    Unjust Enrichment (Count IV)

Defendants contend that Plaintiff's unjust enrichment claim fails because New Jersey law does not recognize unjust enrichment as an independent tort claim and because, even under a quasi-contractual theory, Plaintiff "did not perform or confer a benefit on any Defendant here expecting remuneration from that Defendant." (*See* Defs.' Moving Br. at 13.)

"To establish unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994) (citations omitted). Put differently, "[t]he unjust enrichment doctrine requires that [a] plaintiff show that [he] expected remuneration from the

---

[4] Defendants argue on reply that "there is no 'clearly established right' that a consumer at a business like JB & A's The UPS Store cannot be charged a convenience fee by that business owner in addition to the $2.50 that a notary public may receive for providing the service." (Defs.' Reply Br. at 12.) Defendants further point out that "[b]ecause the allegation in *McLaren* was that McLaren had been charged $5.00 for a notary service, the Appellate Division did not have occasion to consider, and did not consider, if there could be a violation of Section 22A:4-14 where a person seeking a notarial service was charged a $2.50 notary fee, and a '[c]onvenience' fee of $12.50 as Tripicchio alleges." (*Id.*) While the Court does not read the Appellate Division's decision in *McLaren* so narrowly, the Court need not consider this argument at length here—it having been raised for the first time on reply. *See, e.g., Aussie Painting Corp. v. Allied Painting, Inc.*, No. 20-02677, 2021 WL 960825, at *5 (D.N.J. Mar. 15, 2021) (stating that "it is well-established that new arguments cannot be raised for the first time in reply briefs").

defendant at the time [he] performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *Id.*

Here, Defendants are correct that Plaintiff may not maintain an unjust enrichment claim under a tort theory, as "New Jersey law does not recognize unjust enrichment as an independent tort cause of action." *Chernus v. Logitech, Inc.*, No. 17-673, 2018 WL 1981481, at *16 (D.N.J. Apr. 27, 2018). As for a claim under a quasi-contractual theory, Plaintiff's argument that he conferred a benefit on Defendants, which they unjustly retained, is unconvincing. (*See* Pl.'s Opp'n Br. at 31.) Even assuming Plaintiff paid Defendants in excess of the statutory maximum for notarial services, Plaintiff's payment was part of a transaction in which Defendants provided a service at an agreed upon price—that is, each party received their expected benefit. Plaintiff fails to cite any authority supporting the notion that a transaction for services at a fixed price gives rise to a cause of action for unjust enrichment where those services were sufficiently rendered. *Cf. N.Y. Pipeline Mech. Contractors, LLC v. Sabema Plumbing & Heating Co., Inc.*, No. 10-148, 2012 WL 209349, at *2 (D.N.J. Jan. 24, 2012) (explaining an action for unjust enrichment "is maintainable when the defendant has received money which in equity and good conscience belongs to the plaintiff" because "the money had been paid by mistake or compulsion" or "the consideration was insufficient"). Plaintiff's claim for unjust enrichment, therefore, fails based on the alleged facts.

Further, Plaintiff cannot avoid dismissal of his unjust enrichment claim by asserting that there are issues of fact regarding whether his payment was "voluntary." (*See* Pl.'s Opp'n Br. at 32.) "The common law voluntary payment rule provides that where a party, without mistake of fact, or fraud, duress or extortion, voluntarily pays money on a demand which is not enforcible against him, he cannot recover it back." *Rickenbach v. Wells Fargo Bank, N.A.*, 635 F. Supp. 2d 389, 395 (D.N.J. 2009) (internal quotations and citations omitted). But courts in this District have

"determined that application of the voluntary payment rule cannot be resolved on a motion to dismiss, where the complaint does not establish whether the plaintiff's payment was truly voluntary and made without mistake of fact." *Id.* Here, Plaintiff does not set forth any allegations indicating that his payment was the result of a mistake of fact or coercion. Rather, as explained above, Plaintiff's allegations demonstrate that the payment was made willingly as part of a transaction for services rendered. *See Matter of N.J. State Bd. of Dentistry*, 84 N.J. 582, 588 (1980) (explaining that ignorance or mistake of law "furnishes no ground for recovery" under unjust enrichment and restitution principles) (citation omitted). Thus, Defendants' motion to dismiss Plaintiff's claim for unjust enrichment is granted.

5.    *Breach of Duty of Good Faith and Fair Dealing (Count V)*

Defendants assert that Plaintiff cannot maintain a cause of action for breach of contract because no contract existed between Plaintiff and Defendants, but, even if an implied-in-fact contract arose from the notary services transaction, the implied covenant of good faith and fair dealing cannot override the terms of that contract, which provided that Plaintiff pay $15.00 for notarization of a document. (*See* Defs.' Moving Br. at 14.)

"A covenant of good faith and fair dealing is implied in every contract in New Jersey." *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 244 (2001). "Implied covenants are as effective components of an agreement as those covenants that are express," but "the implied covenant of good faith and fair dealing cannot override an express term in a contract." *Id.* "The covenant of good faith and fair dealing calls for parties to a contract to refrain from doing 'anything which will have the effect of destroying or injuring the right of the other party to receive' the benefits of the contract." *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 182 N.J. 210, 224-25 (2005) (quoting *Palisades Props., Inc. v. Brunetti*, 44 N.J. 117, 130 (1965)). "Good faith conduct is conduct that does not violate community standards of decency, fairness or

reasonableness." *Id.* at 224 (internal quotations and citations omitted). "Proof of bad motive or intention is vital to an action for breach of the covenant." *Id.* at 225 (internal quotations and citations omitted).

Here, even if the Court were to find that the transaction for notarial services between Plaintiff and Defendants gave rise to an express or implied-in-fact contract, it is undisputed that the terms of that contract would indicate an agreement to pay $15.00 for the services. Plaintiff does not meaningfully respond to Defendants' argument that the terms of that agreement cannot be overridden by the covenant of good faith and fair dealing. Further, Plaintiff does not allege any bad motive or intention on Defendants' part. Plaintiff points to a recent decision in this District finding that allegations of a violation of an energy pricing regulation "permits a reasonable inference that [the defendant] acted in bad faith." *Marshall v. Verde Energy USA, Inc.*, No. 18-1344, 2020 WL 5905072, at *11 (D.N.J. Oct. 5, 2020). But, in that case, the district court noted "ambiguity of the pricing term" in the relevant contract, which provided the defendant with "unfettered discretion" in setting a "monthly variable rate," and thus there was no issue as to the covenant of good faith and fair dealing overriding an agreed upon price. *See id.* Because the covenant of good faith and fair dealing cannot override the agreed upon terms of the notary services transaction between Plaintiff and Defendants, Plaintiff's claim for breach of contract is dismissed.

### 6.    *Negligence (Count VI)*

Defendants move to dismiss Plaintiff's negligence claim on the alternative grounds that Defendants do not have a duty of care to charge a specific price for notary services and that Defendants' alleged violation of N.J.S.A. § 22A:4-14 does not constitute negligence *per se*. (*See* Defs.' Moving Br. at 16-18.) "To sustain a cause of action for negligence, a plaintiff must establish four elements: (1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages." *Townsend v. Pierre*, 221 N.J. 36, 51 (2015) (internal quotations and citations omitted).

Here, Defendants are correct that Plaintiff cannot rely upon negligence *per se* to state a cause of action. "[T]he only occasion for application of negligence per se in New Jersey is in the exceptional situation . . . where a statute specifically incorporates a common law standard of care." *Labega v. Joshi*, 470 N.J. Super. 472, 491 (App. Div. 2022) (internal quotations and citation omitted). The statute Defendants are alleged to have violated, N.J.S.A. § 22A:4-14, contains no such common law standard of care. Similarly, Plaintiff cannot rely on the alleged violation of the statute to establish negligence under an ordinary standard of care. Plaintiff provides no legal support for the conclusory assertion that Defendants' general "duty to exercise the care that would be exercised by a reasonable person or entity under similar circumstances" "include[s] a duty to charge lawful rates for services." (Am. Compl. ¶¶ 88-89; Pl.'s Opp'n Br. at 35.) Furthermore, under New Jersey law, "[i]f a 'plaintiff does not fall within the class of persons for whose benefit the statute was enacted,' such statute is 'not applicable either as evidence of a duty or as evidence of negligence arising from a breach of such alleged duty.'" *Badalamenti v. Simpkiss*, 422 N.J. Super. 86, 101-02 (App. Div. 2011) (quoting *Fortugno Realty Co. v. Schiavone–Bonomo Corp.*, 39 N.J. 382, 393 (1963)). Plaintiff has offered no argument that N.J.S.A. § 22A:4-14 was enacted for the benefit of notarial services consumers such as himself. Plaintiff therefore cannot use the mere existence of the statute as evidence of a common law duty on the part of Defendants beyond the ordinary standard of care owed to all persons. For these reasons, Defendants' motion to dismiss Count VI is granted.

## IV.   <u>CONCLUSION</u>

For the reasons stated above, Defendants' motion to dismiss is **DENIED** as to Counts I–III and **GRANTED** as to Counts IV–VI, which are dismissed without prejudice. The Court will enter an Order consistent with this Memorandum Opinion.

s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE
